FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FEB 2 0 2003

*Robert M March*

CLERK

JACK MAES,

    Plaintiff,

v.                                                          No. CIV-02-196 JP/WWD

CITY OF LAS VEGAS, a chartered
New Mexico municipality, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On February 3, 2003, Defendant City of Las Vegas filed a Motion for Summary Judgment, asserting that Plaintiff's remaining claims for due process and breach of contract should be dismissed (Doc. No. 48), in response to which Plaintiff filed on February 20, 2003, an "Opposition to Defendant Motion for Summary Judgment and Reply to City Opposition to Plaintiff Motion" and "Plaintiff Affidavit in Opposition to City Motion for Summary Judgment and in Support of His Motion." On February 11, 2003, Plaintiff filed a Motion and Memorandum for Summary Judgment (Doc. No. 51). Having reviewed the parties' arguments and the evidence, this Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion and Memorandum for Summary Judgment.

I.    **Background**

The following are the undisputed facts in this case. Plaintiff Jack Maes was appointed as City Manager of the City of Las Vegas ("City") by a vote of the City Council and Mayor on April 13, 2000. Plaintiff began his employment as the City Manager on or about April 19, 2000.



The City Manager is the chief administrative officer of the City. The City Charter provides that the City Manager "shall be employed for an indefinite term at an adequate salary and shall hold office until a vacancy is created by his death, resignation or removal. Removal by the Mayor and the Council shall be effective only after a formal notice and a public hearing." Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. K, Art. III, Sec. 1. Additionally, the City Charter sets forth the City Manager's duties and responsibilities. Id. at Art. III, Sec. 3-4.

On or about April 19, 2000, Plaintiff signed an agreement entitled "Contract of Employment" that included an express written term of six months, starting May 1, 2000, and ending on November 1, 2000. Pl.'s Mot. and Mem. for Summ. J., Ex. 3. The agreement provided that Plaintiff would be paid $55,000 per year, and that following a favorable vote of confidence on November 1, 2000, Plaintiff's rate of pay would increase to $58,000 per year. The agreement also contained the following termination provision:

> Jack Maes may be terminated for cause by the City Council and Mayor. Cause for termination includes, but is not limited to the following: an act or event which in the opinion of the City Council is detrimental to the general welfare of the City; incompetency; refusal or failure to follow City Council's directives; willful or negligent failure of duty; . . . failure to comply with the City's policies; and/or any other conduct not in the best interest of the City.

Id.

The April 19, 2000 agreement was signed by Plaintiff, Mayor Tony Martinez, Jr., and the City Attorney, Dave Romero, Jr., who also signed for the City Clerk. Although Plaintiff admits that this agreement was not originally adopted and approved by the City Council in an open session, Plaintiff claims that the City Council delegated the negotiation and formalization of the contract to the Mayor and City Attorney. Id. at 6.

On October 11, 2000, a special meeting of the City Council was held. During the

meeting, City Councilor Eugene A. Romero asked that a vote of confidence be placed on the agenda of the meeting. The vote of confidence concerned whether or not Plaintiff's contract would expire after November 1, 2000, as per the contract terms, and whether or not Plaintiff would continue as City Manager after November 1, 2000. Councilor Romero's request that the vote of confidence be put on the agenda was denied.

Nevertheless, after November 1, 2000, Plaintiff continued his employment as City Manager and continued to receive periodic payments of his salary at the rate of $55,000 per year. Additionally, Plaintiff continued to receive dues, sick leave, a city vehicle, and health and life insurance, as provided in the April 19, 2000 agreement.

On February 13, 2001, at a special meeting of the City Council, Mayor Martinez informed the Council that Plaintiff's contract had expired. A motion was made to retain Plaintiff as the City Manager, which carried by a 5-4 vote, with Mayor Martinez breaking the tie. Subsequently, on February 16, 2001, Plaintiff received a 3% pay increase, retroactive to July 1, 2000, per request of the Mayor and City Council.

During the course of Plaintiff's employment, Plaintiff developed a poor working relationship with the Finance Director for the City, Ann Marie Gallegos. On May 23, 2001, Plaintiff and Ms. Gallegos attended a City Council meeting where they were each asked to resign from their respective positions. Both Plaintiff and Ms. Gallegos refused and both were suspended with pay by a vote of the City Council. Plaintiff claims that his suspension came as a surprise to him, as it was not on the agenda for the May 23, 2001 meeting. Plaintiff admits in his deposition, however, that at the end of the May 23, 2001 meeting, Plaintiff was informed that a City Council meeting would take place on May 30, 2001, and that Plaintiff knew that his and

Ms. Gallegos' employment status would be discussed at the May 30, 2001 meeting. See Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. C at 65-66.[1]

On May 25, 2001, the Las Vegas Optic, the daily newspaper for the City of Las Vegas, published a notice for the May 30, 2001 City Council meeting. Id. at Ex. F. The notice did not mention that Plaintiff's employment would be a subject of the May 30, 2001 meeting, but the notice informed the public how they could obtain a copy of the agenda. The Special City Council Meeting Agenda listed the continuation of Plaintiff's employment as City Manager as a topic for the May 30, 2001 meeting. Id. at Ex. G.

On May 30, 2001, at or around 3:00 p.m., Plaintiff received a letter from Dave Romero, Jr., the City Attorney, informing Plaintiff that "the Council will determine whether you will continue with your employment with the City on May 30, 2001 at 6:00 p.m. at City Council Chambers." Pl.'s Mot. and Mem. for Summ. J., Ex. 11.

Both Plaintiff and Ms. Gallegos attended the May 30, 2001 City Council special meeting. Members of the public were given an opportunity to speak at the meeting. Kathy Fisher Zamora spoke on behalf of the Finance Department regarding Ms. Gallegos' termination. Lavinia Fenzie also voiced concerns regarding the Finance Department. Later in the meeting, a motion was made that the City not continue Plaintiff's employment as City Manager and that Plaintiff be terminated. The motion carried 8-0 in favor of Plaintiff's termination. No reasons were given during the meeting for Plaintiff's termination. Plaintiff never filed a grievance or appeal of the City Council's decision after his suspension and termination.

---

[1]Plaintiff states in his deposition that he knew the meeting discussing his employment status was to take place on "Wednesday, May 31, 2001," but it is clear from the depositions and pleadings that Plaintiff was referring to the Wednesday, May 30, 2001 meeting.

Plaintiff filed this federal action alleging violation of his due process and First Amendment rights under 42 U.S.C. § 1983, conspiracy under 42 U.S.C. §§ 1983 and 1985, and breach of contract. In an agreed order, Plaintiff voluntarily dismissed all defendants except the City of Las Vegas, and Plaintiff dropped his First Amendment and conspiracy claims (Doc. No. 50). Plaintiff's remaining causes of action are for due process under § 1983 and breach of contract.

## II.    Discussion

### A.    Due Process

A due process analysis consists of two steps. The first step is to determine whether the plaintiff has a property or liberty interest protected by the Fourteenth Amendment. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). If a property or liberty interest is identified, the second step is to determine whether the defendant deprived plaintiff of that interest without due process. <u>Russo v. White</u>, 775 F.Supp. 639, 644 (S.D.N.Y. 1991).

In the employment context, a property interest arises from a legitimate expectation of continued employment. <u>Roth</u>, 408 U.S. at 577. "The existence of a property interest is 'defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" <u>Russillo v. Scarborough</u>, 935 F.2d 1167, 1170 (10th Cir. 1991) (quoting <u>Roth</u>, 408 U.S. at 577). Under New Mexico law, a public employee has a protected property interest only if he has an express or implied right to continued employment. <u>Id.</u> (citing <u>Lovato v. City of Albuquerque</u>, 106 N.M. 287, 289-90, 742 P.2d 499, 501-02 (1987)). In this case, Plaintiff claims

a protected property interest arising from both the City Charter and the April 19, 2000 employment agreement.

### 1.    The City Charter

The City Charter provides that the City Manager "shall be employed for an indefinite term . . . and shall hold office until a vacancy is created by his death, resignation, or removal. Removal by the Mayor and the Council shall be effective only after a formal notice and a public hearing." Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. K, Art. III, Sec. 1.

In New Mexico, employment without a definite term is presumed to be at will. Trujillo v. Northern Rio Arriba Electric Coop., Inc., 131 N.M. 607, 615, 41 P.3d 333, 341 (2001). In this case, the City Charter expressly states that employment of the City Manager is for an "indefinite term." Thus, the City Charter, by itself, creates only an at-will employment relationship for the City Manager. An at-will employee has no property interest because the employee has no legitimate expectation of future employment. See Russillo, 935 F.2d at 1170. Consequently, the City Charter does not convey to Plaintiff a protected property interest.

This conclusion is further supported by the provisions in the City Charter regarding the Merit System Plan. The City Charter provides for a Merit System Plan governing the policies for classifying, promoting, discharging, and regulating City employees. Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. K, Art. III, Sec. 8-9. The Charter, however, states that the Merit System applies to all employees other than the City Manager and Department Directors. See id. at Sec. 7-8. The City Charter defines the City Manager as the "chief administrative officer." Id. at Sec. 1. Hence, the City Charter provisions exclude the City Manager from the Merit System and provide additional evidence that the City Manager is an at-will employee. See Webb v. Village

of Ruidoso-Downs, 117 N.M. 253, 871 P.2d 17 (Ct. App. 1994) (holding that NMSA 1978, § 3-13-4 (1965), which authorizes municipalities to enact ordinances establishing merit systems, does not permit such ordinances to apply to municipal officers).

Moreover, the City Charter's provision that the City Manager can only be removed "after a formal notice and public hearing" is not sufficient to create a property interest in continued employment. A property interest is defined solely by substantive rather than procedural restrictions on an employer's discretion to terminate an employee. Russillo, 935 F.2d at 1170-71. Grievance procedures themselves do not create a property interest. Id. at 1171; Carnes v. Parker, 922 F.2d 1506, 1511 (10th Cir. 1991).

In sum, the City Charter does not give Plaintiff a property interest in continued employment as City Manager that is protected by the Constitution.

2.      **The April 19, 2000 Agreement**

In addition, Plaintiff contends that the April 19, 2000 employment agreement created a property interest in continued employment as the City Manager. The April 19, 2000 agreement, entitled "Contract of Employment," included an express written term of six months, starting May 1, 2000, and ending on November 1, 2000; provided that Plaintiff would be paid $55,000 per year; and contained provisions that Plaintiff could be terminated only for cause and that Plaintiff was subject to the Las Vegas Personnel Ordinance, except for progressive discipline and grievance. Pl.'s Mot. and Mem. for Summ. J., Ex. 3. Plaintiff argues that this agreement gave Plaintiff a legitimate expectation of continued employment. Defendant asserts, however, that the April 19, 2000 employment agreement is not legally binding because it directly conflicts with the City Charter provision that the City Manager "shall be employed for an indefinite term."

7

Under New Mexico law, the mayor and city council are creatures of the legislature; they only have such powers as are conferred by law, either expressly or by necessary implication. See NMSA 1978, §§ 3-11-1 through 3-12-4; Swinney v. Deming Bd. of Educ., 117 N.M. 492, 494, 873 P.2d 238, 240 (1994). Municipal officials are limited in their authority to bind governmental entities, and the public is charged with notice of their limitations. Campos de Suenos, Ltd. v. County of Bernalillo, 130 N.M. 563, 572, 28 P.3d 1104, 1113 (Ct. App. 2001). An attempt by a governmental agency to enter into a contract in violation of its authority will be considered ultra vires and void. See Swinney, 117 N.M. at 494, 873 P.2d at 240; Wiggins v. Housing Authority of Kansas City, 916 P.2d 718, 721 (Kan. Ct. App. 1996). Moreover, any inconsistency between a contract and statute or municipal ordinance must be resolved in favor of the statute or municipal ordinance. See International Brotherhood of Electrical Workers v. Town of Farmington, 75 N.M. 393, 396, 405 P.2d 233, 236 (1965); Wiggins, 916 P.2d at 721 ("[A]ny reasonable doubt as to the existence of a particular power must be resolved against its existence.").

The New Mexico Supreme Court, in regard to the ability of local school boards to contract, stated that, because local school boards, by statute, have only limited powers to enter into contracts, any attempt by a local school board to enter into a contract that violates the specific statutory provisions governing it is ultra vires and void. Swinney, 117 N.M. at 494, 873 P.2d at 240. In Swinney, a local school board attempted to enter into an employment contract with a school administrator whereby the administrator could not be terminated except for uncorrected and unsatisfactory work performance. Id. at 493, 873 P.2d at 239. The court determined that the contract conflicted with the School Personnel Act, which provided that non-

tenured employees had no expectation of continued employment, and thus, the contract was ultra vires and void.  See id. at 494, 873 P.2d at 240.  The court concluded that the school administrator's employment contract did not entitle him to a renewal of employment or an opportunity to correct unsatisfactory work performance.  Id.  In so holding, the New Mexico Supreme Court stated:  "'A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication.'"  Id. (quoting Gragg v. Unified Sch. Dist. No. 287, 627 P.2d 335, 338 (Kan. Ct. App. 1981)).

The Tenth Circuit considered a similar case regarding the limited powers of a municipality to adopt personnel policies that conflict with the terms of the city charter.  See Driggins v. City of Oklahoma City, 954 F.2d 1511 (10th Cir. 1992).  In Driggins, a former Human Resources Specialist for the City of Oklahoma City brought a § 1983 action against the city claiming a deprivation of her property interest in continued employment without due process.  954 F.2d at 1512.  The city charter in that case empowered the city manager to discharge employees "for the good of the service."  Id. at 1513.  The plaintiff argued that her property interest derived, not from the city charter, but from personnel policies that had been adopted by resolution of the city council.  Id. at 1514.  The personnel policies enumerated certain circumstances in which permanent employees could be discharged.  Id.

In rejecting plaintiff's due process claim, the Tenth Circuit held that the city council lacked the authority to bind the city to terms or reasons for dismissal contrary to those terms or reasons stated in the city charter.  Id.  Under Oklahoma law, "[m]unicipal officials empowered to perform certain acts, cannot themselves limit their powers by imposing restrictions upon the

9

exercise of their power in such a manner as to effect the legality of their actions."  Id. at 1515

(quoting Umholtz v. City of Tulsa, 565 P.2d 15, 22 (Okla. 1977)).  The Tenth Circuit concluded

that neither personnel policies nor mutually explicit understandings could limit the specific

powers granted under the city charter governing the terms of employee dismissals.  Id.  Thus, the

Tenth Circuit held that the plaintiff had no property interest in continued employment.  Id.

Like in Driggins, in this case the terms of employment of the City Manager are

controlled by the City Charter.  The City Charter dictates that the City Manager "shall be

employed for an indefinite term."  Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. K, Art. III,

Sec. 1.  In New Mexico, employment for an indefinite term is presumed to be at will.

Therefore, the express terms of the City Charter limit the Mayor and City Council's ability to

bind the City to an employment contract for a definite term.  As reasoned in Driggins, where

certain terms governing the dismissal of the City Manager are explicitly set forth in the City

Charter, the Mayor, City Council, and other City officials are not authorized to alter or otherwise

restrict those terms so as to legally bind the City.

The contractual limitations imposed by the City Charter regarding the City's employment

relationships with municipal officers can be justified as follows:

> [T]o force the winner of a political election to be saddled with a member of his
> immediate executive staff with whom he cannot work, is to block the efficiency
> of that political system.  The governing body itself is of course a check on the
> powers of the mayor's office; but the legislature recognized the necessity for the
> mayor to retain control over his or her policy making employees.

Webb, 117 N.M. at 256, 871 P.2d at 20 (quoting Carlson v. Bratton, 681 P.2d 1333, 1336 (Wyo.

1984)) (explaining the policy behind the exemption of appointed officials from merit system

ordinances).

10

Consequently, the provisions of the April 19, 2000 agreement -- that Plaintiff's employment was for a definite term and that Plaintiff could only be terminated for cause -- conflict with the explicit terms of the City Charter that the City Manager can only be employed for an "indefinite term."[2]  As a result, and as dictated by the New Mexico Supreme Court's decision in <u>Swinney</u>, the April 19, 2000 agreement is ultra vires and void.[3]

Furthermore, even if this Court were to find that the April 19, 2000 agreement did not conflict with the City Charter, Plaintiff cannot rely on the agreement as granting Plaintiff a continued expectation of employment, because the agreement was never approved in an open meeting.  Indeed, Plaintiff admits that the contract was not originally adopted and approved in open session.  See Pl.'s Mot. and Mem. for Summ. J., at 6.  Nonetheless, Plaintiff argues that the April 19, 2000 agreement was ratified by the City Council at the February 13, 2001 special meeting, giving Plaintiff a continued expectation of employment.  The minutes of the February 13, 2001 special meeting, however, do not demonstrate that the City Council voted to extend Plaintiff's employment for a definite term or that the City Council adopted the April 19, 2000

---

[2]The April 19, 2000 agreement also contains a provision stating that Plaintiff was subject to the Las Vegas Personnel Ordinance, except for progressive discipline and grievance.  To the extent that this provision can be construed as limiting the power of the Mayor and City Council to remove Plaintiff from his position as City Manager, the provision also conflicts with the express terms of the City Charter, and thus according to <u>Swinney</u>, is ultra vires and void.

[3]Plaintiff nevertheless asserts that, even if a portion of a contract is rendered invalid, the offending clause can be removed and the rest of the contract can be enforced.  In this case, however, the clauses that conflict with the relevant terms of the City Charter are the termination for cause provision and the provision setting forth Plaintiff's term of employment.  When these two offending clauses are removed from the contract, the contract cannot be interpreted to convey on Plaintiff any right to continued employment as City Manager.

11

contract. Rather, the minutes of the meeting show that a motion was made and carried "to retain Jack Maes as the City Manager." Defs.' Mem. in Supp. of Mot. for Summ. J., Ex. D at 2-3.

Although limited personnel matters are exempt from the Open Meetings Act, final actions on personnel are subject to the Open Meetings Act. NMSA 1978, § 10-15-1(H)(2) (1993). Ratification of employment is a final action under the Open Meetings Act. See Trujillo v. Gonzales, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) (holding that the ratification of plaintiff's employment as an exempt employee was a final action subject to the Open Meetings Act). Moreover, "an agreement entered into separately by the members of the council outside a regular meeting is not binding." Id. at 622, 747 P.2d at 917 (quoting 56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions* § 155 (1971)).

In this case, Plaintiff has not demonstrated that the City Council ever explicitly ratified, in an open meeting, a contract of employment for Plaintiff for a specified term extending beyond May 30, 2001, the date Plaintiff was terminated. Plaintiff also has not shown this Court sufficient evidence that the Mayor and City Attorney had the authority to enter into an employment contract with Plaintiff as City Manager or that the City Council ever reviewed the terms of the contract.[4] In order to effectuate the legislative intent behind the Open Meetings Act, the statute should be interpreted broadly and exceptions narrowly construed. Schmiedicke v. Clare Sch. Bd., 577 N.W.2d 706, 708 (Mich. Ct. App. 1998); Maready v. City of Winston-Salem, 467 S.E.2d 615, 629 (N.C. 1996). For these reasons, the failure of the Council to ratify

---

[4] Cf. Treloar v. County of Chaves, 130 N.M. 794, 802, 32 P.3d 803, 811 (Ct. App. 2001) (allowing employment contract to be entered into without a public meeting where the Board of Trustee's bylaws clearly gave authority to the CEO to enter into employment contracts with his subordinates and where the Board reviewed the contracts in closed sessions).

the April 19, 2000 employment agreement in an open meeting rendered the agreement invalid under the Open Meetings Act. See NMSA 1978, § 10-15-3 (1993). Thus, the April 19, 2000 agreement does not convey on Plaintiff any legitimate expectation of continued employment.

Additionally, this Court concludes that Plaintiff has no property interest in continued employment because the explicit terms of the April 19, 2000 Contract of Employment, even if it were valid, provided that Plaintiff's employment as City Manager expired on November 1, 2000, well before Plaintiff's termination on May 30, 2001. The April 19, 2000 agreement contained no renewal clause that would give Plaintiff any continued expectation of employment.

In sum, Plaintiff has not demonstrated that an employment contract for a definite term was ever ratified in an open meeting, as required by the Open Meetings Act. Moreover, even if Plaintiff could show that Plaintiff's employment agreement was ratified in an open meeting or that the adoption of Plaintiff's employment contract was not subject to the Open Meetings Act, the terms of the agreement providing for termination only for cause and for employment over a definite period of time are inconsistent with the City Charter, and thus ultra vires and void. Therefore, this Court must hold that Plaintiff has no contractual right to continued employment as City Manager.[5]  Consequently, Plaintiff's § 1983 due process claim must be dismissed.

B.      **Breach of Contract**

Count III of Plaintiff's complaint alleges that Defendant City of Las Vegas breached Plaintiff's written employment contract when the City terminated Plaintiff for less than adequate cause. Plaintiff's breach of contract claim fails for the same reasons, stated above, that Plaintiff

---

[5]Given this Court's determination that Plaintiff has no property interest in continued employment as City Manager, this Court need not address the issue of the sufficiency of the process afforded Plaintiff.

13

has no valid § 1983 denial of due process claim.  Hence, Plaintiff's breach of contract claim must be dismissed.

IT IS THEREFORE ORDERED that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 48) is GRANTED.

2.      Plaintiff's Motion and Memorandum for Summary Judgment (Doc. No. 51) is DENIED.

3.      Plaintiff's remaining causes of action for denial of due process under § 1983 and breach of contract will be dismissed with prejudice.

CHIEF UNITED STATES DISTRICT JUDGE

14